FILED

January 30 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. AF 11-0244

| | | |
|---|---|---|
| IN RE PETITION TO ADOPT AMENDED BOARD | ) | |
| OF BAR EXAMINERS' RULES | ) | ORDER |
| | ) | |

FILED

ORDER    JAN 3 0 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Pursuant to Article VII, section 2 of the Montana Constitution, the Montana Supreme Court holds the authority to establish rules for admission to the State Bar of Montana. To fully implement the Uniform Bar Examination (UBE) as adopted by the Court in its Order dated July 3, 2012, two sets of rules require modification -- the Rules for Admission to the Bar of Montana and the Montana Board of Bar Examiners' Rules. At the Court's request, the Montana Board of Bar Examiners has filed proposed amendments to both of those sets of rules.

The proposed amendments to the Board of Bar Examiners' Rules relate principally to the creation and implementation of a Montana law educational component as part of the Montana Bar Examination, elimination of four Montana essay questions, and the increased passing score. They also include some clean-up of language in existing rules. In addition, the Board has proposed new provisions regarding cheating, necessitated by recent advances in electronic devices.

The Court having reviewed the changes to the Montana Board of Bar Examiners' Rules as proposed by the Board,

IT IS HEREBY ORDERED that the rule changes proposed by the Board are ADOPTED. The Montana Board of Bar Examiners' Rules are amended to read as shown in the attachment to this Order.

The Clerk is directed to provide copies of this order and the attached Rules to the Chair and each member of the Board of Bar Examiners; Marie Connolly, administrator of the Montana Bar Examination; Thomson Reuters; Todd Everts at the Montana

1

Legislative Services Division; and Dean Irma Russell at the University of Montana School of Law.

DATED this ___30___ day of January, 2013.

_____
Chief Justice

_____

_____

_____

_____

_____

_____
Justices

# MONTANA BOARD OF BAR EXAMINERS' RULES

## Rule 101 – Board of Bar Examiners.

**A.**     **Contact with Board of Bar Examiners.**     All correspondence or other communications to the members of the Board of Bar Examiners must be directed to the Bar Admissions Administrator at the State Bar of Montana, P.O. Box 577, Helena, MT 59624, phone (406) 442-7660. Applicants are prohibited from contacting Board members directly, unless given prior approval by the Bar Admissions Administrator.

**B.**     **Public Request.** Upon request, the State Bar of Montana staff may confirm that an individual has filed an application for admission.

## Rule 102 – Bar Examination Certification, Dates, & Content.

**A.**     **Certification.**     No applicant will be allowed to sit for the Montana Bar Examination until and unless he or she has been duly certified or conditionally certified by the Commission on Character and Fitness.

**B.**     **Dates of Examination.**  The UBE is administered over two days, with the MBE given on the last Wednesday of February and July and the MEE and MPT given on the prior Tuesday. Unless otherwise directed by the Board, the examination will be held in Helena during the February administration and in Missoula during the July administration. The examination facility will be determined by the Board.

**C.**     **Montana Law Seminar.**  All applicants are required to attend a Montana law seminar prior to admission to the Montana Bar.  The seminar will be held bi-annually on the Thursday following administration of the bar examination.

## Rule 103 – Testing Accommodations.

**A.**     **Application Deadline for Testing Accommodations.**  An applicant who claims a disability and who seeks an accommodation on the bar examination must submit a request for the accommodation with supporting evidence by the deadline for application for the relevant bar examination.  Applications for accommodations not submitted by the application deadline will not be considered, except where the disability occurs after the application filing deadline.

**B.**     **Consideration of Requests.**  Requests for accommodation will be considered on a case-by-case basis.  To be entitled to an accommodation, the requesting applicant must submit evidence sufficient to satisfy the Board of Bar Examiners or its designee that:

1. The applicant is otherwise qualified for the bar examination;
2. The applicant suffers from a physical or mental impairment;
3. The impairment substantially limits the applicant in a major life activity that is of central importance to daily life. (To be substantially limited in a major life activity means the impairment prevents or severely restricts the applicant from doing activities that are of central importance to most people's daily lives.);
4. The impairment is permanent or long-term;
5. The impairment in terms of the applicant's own experience is substantial. (It is insufficient for an applicant attempting to prove disability status merely to submit evidence of a medical diagnosis of impairment. The applicant must provide persuasive evidence that the impairment has had a substantial impact on the applicant.); and
6. The requested accommodation is tailored to address the impairment as it relates to the bar examination and will effectively permit the applicant to perform "on a level playing field" with other applicants (The accommodation must not be designed to grant an advantage, but merely to address a disability the law will recognize).

Requests for accommodations will be considered by the Board or its designee based on the information submitted by the applicant and such other information as may be reasonably available to the Board. Taking into account the resources available to it, the Board may, but is not required to, seek the assistance of expert counsel on the particular request for accommodation.

The Board may, in its discretion, require the applicant to provide additional information relating to the disability and/or prior accommodations, and may also require that the applicant submit to examination by a qualified professional designated by the Board in connection with the applicant's request for testing accommodations.

C.     **Appeal of Board Decision.** Unless specifically stated otherwise, a decision by the Board on whether or not to grant the accommodation requested or to offer an alternative accommodation shall be final. An applicant may petition for relief from a decision of the Board by petitioning the Montana Supreme Court, which is the final authority on all matters relating to the bar examination and bar admissions in Montana.

D.     **Subsequent Accommodation Requests.** If an applicant defers or does not pass the examination, previously granted testing accommodations may not automatically extend to future examinations. The Bar Admissions Administrator may request an applicant to update the original accommodation request.

If an applicant seeks different accommodations than those previously granted, the Bar Admissions Administrator may request the applicant to file a new request for accommodations.

**E.    Definitions.**

1.    The term "disability" shall mean a disability under the Americans with Disabilities Act of 1990 (ADA), which defines a person with a disability as someone with a physical or mental impairment that substantially limits one or more major life activities. In the bar examination setting, the impairment must limit an applicant's ability to demonstrate, under standard testing conditions, that the applicant possesses the knowledge, skills, and abilities tested on the bar examination.

2.    The term "qualified professional" shall mean a licensed physician, psychiatrist, or other health care provider who has comprehensive training in the field related to the applicant's disability.

3.    An accommodation is an adjustment to or modification of the standard testing conditions that addresses the functional limitations related to the applicant's disability without:

   a)    Fundamentally altering the nature of the examination or the Board's ability to determine through examination whether the applicant possesses the necessary knowledge, skills, and abilities to pass the bar examination; or

   b)    Imposing an undue burden on the Board; or

   c)    Compromising the security of the examination; or

   d)    Compromising the validity of the examination.

## Rule 104 – Examination, Administration, & Grading.

**A.    Attendance at Examination.** No applicant will be admitted to the examination more than one-half hour after the examination begins. If an applicant is late, no extra time will be awarded. The examination session will conclude as scheduled.

**B.    Examination Composition.** The Uniform Bar Examination (UBE) is prepared and coordinated by the National Conference of Bar Examiners and is composed of the Multistate Essay Examination (MEE), two Multistate Performance Test (MPT)

tasks, and the Multistate Bar Examination (MBE). It is uniformly administered, graded, and scored by user jurisdictions and results in a portable score. Applicants must sit for all components in the same administration to earn a UBE score. Scores from any one component of the UBE may not be carried forward to any subsequent examination.

**C.     MEE and MPT Grading Method.** Each examination paper produced by an applicant on the MEE and MPT will be separately graded. Answers will be graded and credited by applicant number and not by applicant name.

**D.     Score Combining.** MEE and MPT answers will be graded on a scale of zero to six, with six being the highest qualifying score and zero being the lowest possible score. All scores will be converted to the 400 UBE point scale and combined with the MBE scaled scores. MEE and MPT scores are scaled to the MBE, with the MBE weighted 50%, the MEE 30%, and the MPT 20%. MBE answer sheets are scanned and centrally scored by the National Conference of Bar Examiners.

Applicants with a combined scaled score of 270 or higher will be deemed to have passed the Montana Bar Examination.

**E.     Disruption During Examination.** Should a serious disruption occur during any portion of the bar examination, the Bar Admissions Administrator and/or proctors will record the incident on the proctor report forms and the Board will be so advised. If examination time is lost by the general examination population due to the disruption, a corresponding amount of time will be added to the end of the same examination session, if reasonably feasible.

**F.     Individual Emergencies During Examination.** If during the course of the examination an applicant has a sudden and unexpected emergency not of the applicant's making and the Bar Admissions Administrator has approved the applicant's departure, the departure will be treated as a deferral and the fees will transfer to the next examination. The Bar Admissions Administrator will record the incident on the proctor report form and the Board will be so advised.

## Rule 105 – Rules of Conduct.

**A.     Examination Rules of Conduct.** All applicants shall abide by all rules and instructions governing the administration of all portions of the bar examination. Applicants MAY NOT:

1.     Falsify the application or proofs required for admission to the bar examination.

2. Utilize any unauthorized notes, books, recordings, electronically retrievable data or other unauthorized materials while taking the examination. The only items permitted in the exam room are those which have been approved by the Board, namely: (1) computers specifically configured for use of computer-based testing, such as Exam Soft; or (2) blue books issued by the test proctors and approved writing tools. Any items which may provide the applicant with information or access to information other than the applicant's own knowledge shall be prohibited. Without limitation, such items include notes, cell phones, backpacks, purses, or timing devices other than a non-digital wristwatch. The Board reserves the right to prohibit any item not specifically referenced at any time, including at the examination. Possession of a prohibited device in the examination may be treated as a cheating incident, and proctors are authorized to confiscate any unauthorized item or device.

3. Use answers or information from other applicants while taking the examination.

4. Provide answers or information to other applicants taking the examination.

5. Read questions on the examination prior to the announcement to begin the examination.

6. Continue to answer any question after the announcement to stop when the session has ended.

7. Remove any multiple-choice, machine-scored examination question from the examination room or otherwise communicate the substance of any of those questions to other applicants or to persons who are employed by or associated with bar review courses.

8. Remove any essay questions, scrap paper, or other materials from the examination room or otherwise communicate the substance of any of those questions to other applicants.

9. Otherwise compromise the security or the integrity of the bar examination in any fashion.

10. Disregard any instruction given by the Bar Admissions Administrator during the course of the examination or cause generalized disruption of the examination.

B.  It is the policy of the Montana Board of Bar Examiners that the bar examination and related conduct of bar applicants be beyond reproach. Applicants are at all times to maintain a professional attitude toward other applicants, proctors, and other examination personnel. Conduct that constitutes a violation of these Rules, the Rules for Admission, or any rules or instructions provided by examination personnel may result in immediate disqualification and ejection from the examination. Violation of the rules, cheating, or taking any action that disrupts or compromises the security or integrity of the bar examination may result in immediate disqualification and ejection from the examination.

## Rule 106 – Impoundment, Investigation, & Appeal.

A.  **Impoundment of Examination Results.** If the Board of Bar Examiners or the Bar Admissions Administrator has cause to believe an applicant has violated any of the rules of conduct set forth above, the applicant's bar examination answers and results may be impounded pending an investigation by the Board.

B.  **Investigation by the Board of Bar Examiners Subcommittee.**

1.  Any concerns the Bar Admissions Administrator has regarding violation of the Rules of Conduct will be referred to a subcommittee of two (2) members of the Board for further investigation. In every such investigation, the Bar Admissions Administrator or the subcommittee may obtain such information that relates to the applicant's conduct, administer oaths and affirmations, and compel by subpoena the attendance of witnesses and the production of books, papers, and documents. The subcommittee may require sworn taped interviews with an applicant to clarify information or to facilitate the investigation.

2.  If it appears to the subcommittee that there is credible evidence that would establish that an applicant violated any of the rules of conduct, the Bar Admissions Administrator shall serve written notice on such applicant by certified mail stating with particularity the facts upon which the alleged violations are based.

3.  The applicant must file a verified answer with the Bar Admissions Administrator within 30 days of service of the notice. The answer shall identify with specificity the alleged violations disputed by the applicant and set forth any evidence which can be adduced by the applicant in contradiction of such charges. The applicant may include a request for a hearing before the Board of Bar Examiners. The applicant must supply an original and seven (7) copies of all such materials to the Board's office.

8

4.   In the event the applicant does not submit a written answer as provided in subsection (B)(3) above, the Board shall deem the facts set forth in the written charges to be established. The charges shall become part of a permanent file before the Commission on Character and Fitness. The applicant may not reapply for admission for at least three years from the date of the Board's charges.

5.   Should an applicant file an Answer, but fail to request a hearing, the Board Chairman shall appoint a committee made up of Board Members other than the two members assigned to investigate the claimed violation of the Rules of Conduct. The committee shall consist of no fewer than 3 members and no more than 5 members. [The Chairman may appoint a member of the bar to sit as a member of the committee in the absence of a Board Member.] The committee shall review the evidence gathered by the Bar Admissions Administrator, the 2-member subcommittee, together with any submission received from the Applicant. The committee shall render a final decision by a majority vote of its members.

## C.   Hearing.

1.   In the event the applicant requests a hearing, the hearing panel shall consist of a majority of the members of the Board of Bar Examiners who did not serve on the subcommittee. A majority of the hearing panel shall make the final decision.

2.   The Board shall notify the applicant in writing of the date, time, and place of such hearing and of the applicant's right to be represented by counsel at the hearing, to examine and cross-examine witnesses, and to present evidence.

3.   If the applicant files a written request for hearing, the applicant shall supply a list of witnesses, including addresses and phone numbers, and all supporting documentation including evidence, affidavits, exhibits, etc., he or she feels is necessary to support his or her certification at least ten (10) days prior to the hearing. The applicant shall supply an original and seven (7) copies of all such materials to the Board's office.

4.   The hearings before the Board shall be open to the public unless the applicant requests that they be private and the panel chair rules that the applicant's individual privacy requires that the meeting be closed. In making this determination, the panel chair must find that the demands of individual privacy clearly exceed the merits of public disclosure.

5. The hearing panel shall determine by a preponderance of the evidence whether the applicant violated the examination rules of conduct.

6. Rules of Evidence need not be observed. The Board may, in its discretion, take evidence in other than testimonial form, having the right to rely upon records and other materials furnished to the Board in response to its request for assistance in its inquiries. The Board may, in its further discretion, determine whether evidence to be taken in testimonial form will be taken in person at the hearing or upon deposition, but in either event all testimonial evidence shall be taken under oath. A complete record of the hearing must be kept.

## D. Findings and Decision.

1. The Board of Bar Examiners shall issue a written decision which shall be reported to the Commission on Character and Fitness.

2. In the decision the Board of Bar Examiners may take one or more of the following actions:

   a) Nullify the results of the examination taken.

   b) Transmit a written report of the matter to bar admission authorities in any jurisdiction.

   c) Take such other action as the Board deems appropriate.

## E. Supreme Court Review.

1. The final decision of the Board shall be conclusive unless a verified Petition for Review is filed by the applicant with the Montana Supreme Court within thirty (30) days following service upon the applicant of the decision in the manner provided by these rules. If an applicant seeks review, the applicant must have the hearing record before the Board transcribed at the applicant's expense and provided to the Court. A copy of the Petition for Review and the hearing transcript must also be filed with the Board.

2. Within thirty (30) days of receipt of said Petition, the Board shall transmit the entire record to the Clerk of the Supreme Court and a response to the Petition fully advising the Court as to the Board's reasons for its decision, and admitting or contesting any assertions made by the applicant in said Petition.